IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOE COOPER, #1735673 | § | |
| VS. | § | CIVIL ACTION NO. 6:12cv777 |
| M. BARBER, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Joe Cooper, a prisoner previously confined at the Gurney Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed in the Southern District of Texas on July 25, 2012. On October 5, 2012, the claims against Defendants Warden D. Miller, Officer G. Smith, Officer S. Ramirez, Officer T. Dazey, Sgt. Jones, Officer Bagley, Mrs. Keith and Captain A. Duerer were severed from the lawsuit and transferred to this Court. On April 25, 2013, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff was given the opportunity to fully discuss the factual basis of his claims. Several prison officials were in attendance during the hearing, including Nurse James Fields and Regional Grievance Officer Karen Norman. All of the witnesses testified under oath.

The Plaintiff's lawsuit included numerous claims. The first concerns an incident with Officer G. Smith shortly after his arrival at the Gurney Unit from a county jail on September 23, 2011. Officer

1

Smith inspected property belonging to incoming inmates. The Plaintiff's property was contained in a large bag. He observed the bag being tossed about before it was placed on the inspection desk. Officer Smith dumped his property onto the desk. He testified that he had placed his prescription bifocal glasses in a case in the bag. However, his glasses were not in the case when Officer Smith dumped his property onto the desk. He observed that his glasses were broken. He also used the word "mangled." Officer Smith confiscated the glasses since they were broken. She denied his request for a property slip documenting the confiscation of his prescription glasses. He noted that he needed documentation in order to obtain replacement glasses. He further noted that he was wearing reading glasses at the time of the incident. He filed a grievance about the destruction of his glasses, which was denied. On the other hand, he acknowledged that he obtained a replacement pair of bifocal glasses several months later. The Plaintiff testified that he sued Officer Smith because she failed to give him a property slip. He added that his situation became worse when his reading glasses were broken while two inmates were fighting on September 30, 2011. He went without any glasses for several months.

The Plaintiff's second claim concerned an incident with Mrs. Keith, who was a member of the mental health team. He alleged that he was denied medication starting on October 11, 2011. He had two prescriptions. He received Zoloft for depression and Trazodone to help him sleep. Trazodone was a tranquilizer that he received due to symptoms associated with Post-Traumatic Stress Syndrome. He testified that he should have received Zoloft during the day and Trazodone at night, but employees at the pill window reversed the times that he received them. He was required to consume the pills when he received them at the pill window. He complained that taking Trazodone early made him sleepy, especially when he was supposed to be working. When he complained to Mrs. Keith, she told him that he did not need the medications any way. They exchanged words. The Plaintiff testified that the problems associated with his medication were not resolved while he was confined at the Gurney Unit.

He noted that he was confined at the unit for about three months. He argued that Mrs. Keith was deliberately indifferent to his serious medical needs.

The Plaintiff testified that he filed a large number of grievances while he was confined at the Gurney Unit. He expressed the opinion that officials retaliated against him for filing grievances. For example, Law Library Supervisor Bagley would schedule him to use the law library. She issued lay-ins for him, but officers would not always let him go at the designated times. He was only able to use the law library two or three times. He testified that he wanted to research the appeal of his Bowie County criminal conviction. He was convicted in August 2011, and was sent to the prison system in September 2011. He initially had one court appointed attorney, who withdrew from the case. Another attorney was appointed to represent him, but there was a period of time in which he did not have an attorney. He acknowledged that his appeal was not dismissed because he did not have an attorney for a period of time.

The Plaintiff mentioned that his appeal was a Texarkana Court of Appeals case in Case Number 06-11-00236-CR. The opinion from that case reveals that he was represented by an attorney and that the conviction was affirmed on the merits. *Cooper v. State*, 363 S.W.3d 293 (Tex. App. - Texarkana 2012, pet. ref'd). The decision affirming his conviction was just one of three convictions affirmed on that day. *See also Cooper v. State*, No. 06-11-00237-CR, 2012 WL 788636 (Tex. App. - Texarkana March 13, 2012, pet. ref'd); *Cooper v. State*, No. 06-11-00238-CR, 2012 WL 788648 (Tex. App. - Texarkana March 13, 2012, pet. ref'd).

The Plaintiff's fourth claim concerns a strip search that occurred on November 10, 2011. He listed Officer Ramirez in conjunction with this claim, but he testified that she was just a witness. The incident began when he was instructed to go to the sally port. When he reached the sally port, he was required to enter a small hallway connected to the sally port. He was required to undergo a strip search

3

in the small hallway, which he described as a cubicle. He was kept in the hallway for two and one-half hours. In his complaint, he specifically complained that he was forced to undergo a strip search in the presence of female officers. He was subsequently placed on cell restrictions for two and one-half days. He characterized this incident as more retaliation and harassment. He did not know the name of any of the officers who forced him to undergo the strip search.

The Plaintiff's fifth claim involved an incident that occurred on the following day. He was asleep in the dorm when Officer Dazey started poking him in the ribs with a clip board. She told him to wake up and take out the garbage. He told her that he was on cell restrictions and could not go any where. He also told her that he would file a grievance against her if she poked him again. She left the dormitory and came back with other officers, who took him to the infirmary. The Plaintiff stated that he did not suffer any injuries. His primary complaint was that she poked him while he was asleep, which startled him. He again noted that he suffers from Post-Traumatic Stress Syndrome associated with his service in Vietnam. After going to the infirmary, he was transported to see Sgt. Jones and an unidentified lieutenant. Sgt. Jones told him that he was supposed to follow orders regardless of whether he was on cell restrictions.

The Plaintiff's sixth claim concerns the disciplinary case that followed the incident with Officer Dazey. He received a disciplinary case for threatening to inflict harm on Officer Dazey in Case No. 20120075861. He was placed in prehearing detention while waiting to receive a disciplinary hearing. The hearing was conducted on November 21, 2011. He was found guilty. The Plaintiff complained that his counsel substitute did not do anything in his defense. It should be noted that he filed a petition for a writ of habeas corpus challenging the disciplinary case in the Southern District of Texas. Magistrate Judge Ellington issued a detailed Report and Recommendation finding that the petition lacked merit. *Cooper v. Thaler*, No. C-12-174, 2013 WL 1127603 (S.D. Tex. Feb. 7, 2013). United

4

States District Judge Ramos rejected the Plaintiff's objections and found that he failed to show that he was entitled to habeas relief. *Cooper v. Thaler*, No. C-12-174, 2013 WL 1103874 (S.D. Tex. March 18, 2013).

In his seventh claim, the Plaintiff complained about being denied legal supplies on November 14, 2011, while he was confined in prehearing detention. He noted that there was a mobile library in prehearing detention, but he did not receive any supplies. He did not name anyone in conjunction with this claim. He added that he believes that there was a whole lot of negligence going on in the prison system.

The Plaintiff's next claim was against Captain Duerer, the unit grievance officer, who denied his grievances. He finally complained about Warden Dennis Miller. He testified that he sent complaints to the warden, who failed to provide him with a response.

Nurse Fields testified under oath that the Plaintiff submitted sick call requests asking for glasses. The first one was dated December 13, 2011. The Court notes that classification records reveal that the Plaintiff was transferred to another unit on December 15, 2011. The Plaintiff's eyesight was checked on March 8, 2012, and he received new bifocals. The bifocals were too strong, thus he was given a different pair. Nurse Fields stated that the Plaintiff's sick call requests submitted at the Gurney Unit were about glasses and Trazodone. He was not seen in the medical department about his request for glasses until he was transferred to another unit. He was seen by medical personnel at the Gurney Unit regarding his Trazodone prescription. Nurse Fields testified noted that the Plaintiff complained in his sick call requests that the Trazodone was being provided too early in the day. Nurse Fields explained that the last pill window each day is between 3 and 4 p.m. He was given the prescription at that time, but the Plaintiff did not want to take the medication until 6 or 7 p.m.

Discussion and Analysis

In analyzing the Plaintiff's claim, the Court initially notes that federal courts are courts with limited jurisdiction having subject matter jurisdiction only over those matters specifically designated by the Constitution or Congress. *Johnson v. United States*, 460 F.3d 616, 621 n.6 (5th Cir. 2006). The Plaintiff started his first claim by asserting that Officer Smith committed a tort. The Supreme Court has held that many acts that might constitute a violation of state tort law do not amount to federal violations. *Baker v. McCollan*, 443 U.S. 137, 146 (1979). *See also Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988). In this Circuit, before a plaintiff may maintain a civil rights lawsuit, he must show an abuse of governmental power that rises to a constitutional level. *Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986); *Williams v. Kelley*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019 (1981).

The Plaintiff testified that he sued Officer Smith because she did not give him a property slip when she confiscated his broken glasses. The Plaintiff's complaint comes under the broad topic of a prison property claim. A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 535-55 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system provides an adequate post-deprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983

claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994). The Plaintiff specifically complained that his property was confiscated without providing him with confiscation papers. The Fifth Circuit rejected an identical claim in *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). The Fifth Circuit reiterated the basic principle that a prison official's failure to follow prison policies, procedures or regulations does not constitute a violation of due process. *Id.* (citations omitted). Furthermore, "constitutional due process is satisfied because the Texas tort of conversion provides [the plaintiff] with an adequate post-deprivation remedy." *Id.* The Plaintiff's complaint about Officer Smith not providing him with a property slip fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim against Officer G. Smith should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff's claims against Mrs. Keith concern his medication and glasses. Mrs. Keith is a mental health worker. He complained that she did not provide him with any help regarding his medication or obtaining a new pair of prescription glasses. The Plaintiff characterized the medical care he received as being inadequate.

A prisoner has a basis for a civil rights lawsuit concerning the medical care provided to him if prison officials were deliberately indifferent to a serious medical need. Inadequate medical care by a prison official "can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoners's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999) (internal quotation marks omitted). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health

or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

The facts in the present case reveal that the Plaintiff was provided his medication. The crux of his complaint concerned the time he received the medication each day, but such complaint does not rise to the level of a constitutional issue. He also complained about not having glasses, although he admitted that he eventually received a new pair of glasses. A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). The Plaintiff has not shown that Mrs. Keith was deliberately indifferent to his serious medical needs regarding his medication or glasses. He likewise failed to show substantial harm due to any actions on her part. The claim against Mrs. Keith fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim against Mrs. Keith should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

8

The Plaintiff's next claim was against Law Library Supervisor Bagley. He acknowledged that she scheduled him to attend the law library. Other unidentified people hampered his efforts to attend the sessions as scheduled. He testified that he needed to go to the law library to research his criminal cases during a period of time in which he did not have an appellate attorney, although he was eventually appointed an appellate attorney. The attorney provided representation that resulted in a published opinion on the merits affirming his conviction. The Plaintiff acknowledged that he was not harmed by not having an attorney for a short period of time.

Prisoners are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). Prison officials may not abridge or impair an inmate's right of access to court. *See Ex parte Hull*, 312 U.S. 546, 549 (1941); *Johnson v. Avery*, 393 U.S. 483, 486 (1969). "While the precise contours of a prisoner's right of access to court remain obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). The Supreme Court has held that the right of meaningful access to court imposes a duty on prison officials to provide indigent inmates with either an adequate law library or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. at 828.

To prevail on a claim that his right of access to court has been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996). *See also Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). He must identify the nonfrivolous, arguable underlying

claim. *Id.* A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991). The Plaintiff may have had difficulties attending law library sessions, but he failed to show that he was harmed in any way. As such, his access to court claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also presented his claim in terms of retaliation. He testified that all sorts of things happened to him because he filed grievances. Hindering his efforts to use the law library was one example of retaliation. To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). For example, the law is well established that prison officials may not retaliate against an inmate who exercises his right of access to court. *Ruiz v. Estelle*, 679 F.2d 1115, 1153 (5th Cir. 1982), *opinion amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983); *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972). Officials likewise may not retaliate against an inmate for using the grievance system. *Jackson v. Cain*, 864 F.2d 1235, 1249 (5th Cir. 1989). A plaintiff must allege facts showing that the defendant possessed a retaliatory motive. *See Whittington v. Lynaugh*, 842 F.2d 818, 820 (5th Cir. 1988); *Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1190, 1193 (5th Cir. 1985). He must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997); *Jones v. Greninger*, 188 F.3d at 324-25. Mere conclusory allegations of retaliation are not enough. *Moody v.*

*Baker*, 857 F.2d 256, 258 (5th Cir. 1988). Moreover, he must show that "but for" a retaliatory motive, the defendants would not have engaged in the action. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). He must also produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.* Finally, the retaliatory adverse act must be more than a *de minimis* act. *Morris v. Powell*, 449 F.3d 682 (5th Cir. 2006), *cert. denied*, 549 U.S. 1038 (2006). In *Morris*, the Fifth Circuit held that a job transfer from the commissary to the kitchen was *de minimis*, while a transfer to a more dangerous unit was a sufficiently adverse retaliatory act. *Id.* at 687.

In the present case, the Plaintiff presented nothing more than vague and conclusory allegations of retaliation. He did not allege facts showing that any of the named Defendants had a retaliatory motive. He did not show that "but for" a retaliatory motive, someone, such as Ms. Bagley, would not have engaged in specific actions. Finally, he failed to show that any Defendant engaged in a more than *de minimis* act. The retaliation claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff next complained that he was subjected to a strip search, particularly in the presence of female officers. The Fifth Circuit has held that strip searches carried out in nonsecluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional. *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992); *Tasby v. Lynaugh*, 123 Fed. Appx. 614, 615 (5th Cir. 2005). The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also characterized this incident as an example of harassment. Harassment, such as verbal harassment, standing alone does not amount to a constitutional violation. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993). In *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002), the Fifth Circuit held that verbal abuse and requiring an inmate to beg for food did not provide a basis for an actionable claim under § 1983. The Fifth Circuit made the following statement about officials threatening a plaintiff:

> [I]n the Eighth Amendment context, our circuit has recognized as a general rule that "mere threatening language and gestures of a custodial officer[r] do not, even if true, amount to constitutional violations". *McFadden*, 713 F.2d at 146 (quoting *Coyle v. Hughs*, 436 F. Supp. 591, 593 (W.D. Okla. 1977); *accord Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir.) (the use of words, no matter how violent, does not comprise a § 1983 violation), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation under § 1983).

*Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995). The claim of harassment, standing alone, does not constitute a basis for a potentially meritorious civil rights lawsuit.

The Plaintiff next complained about Officer Dazey poking him in the ribs with a clip board. Unwanted touchings may provide a basis for a state tort action for assault, but a federal civil rights lawsuit must involve harm of constitutional proportions. *Copeland v. Nunan*, 250 F.3d 743 (5th Cir. 2001). To state a claim involving force that rises to a potentially meritorious civil rights lawsuit, the Plaintiff must show that he was the victim of excessive use of force, as opposed to a simple assault. The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the

alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10. The Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* physical injury. *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). There must always be some injury, albeit insignificant. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993).

In the present case, the act attributed to Officer Dazey was nothing more than a harmless poking in the ribs to wake him and to tell him to take out the garbage. The act attributed to her did not rise to the level of a constitutional violation nor involve wanton behavior. Moreover, the Plaintiff admitted that he was not harmed by her actions; instead, she simply startled him. The claim fails to

state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff went on to complain about the disciplinary case that followed. He was charged with threatening Officer Dazey. It is noted that he is seeking to have the disciplinary case expunged from his record, along with monetary damages. The Plaintiff does not have a basis for a potentially meritorious civil rights lawsuit about the disciplinary case unless he first shows that the result was reversed on direct appeal, expunged by executive order, declared invalid by an authorized state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997). It is again noted that he challenged the disciplinary case in the Southern District of Texas in a habeas corpus proceeding. The petition was dismissed. The Plaintiff has not satisfied the prerequisite for proceeding in a civil rights lawsuit about the disciplinary case, thus the case should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about the representation provided by counsel substitute. It is initially noted that defense attorneys do not act under "color of state law," thus they cannot be directly liable in a § 1983 suit. *See Briscoe v. LaHue*, 460 U.S. 325, 329 n.6 (1983); *Polk County v. Dodson*, 454 U.S. 312 (1981); *Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir. 1983). A counsel substitute in a prison disciplinary proceeding has the same purpose as a defense attorney in a criminal case and thus ordinarily cannot be sued in a civil rights lawsuit. *Banuelos v. McFarland*, 41 F.3d 232 (5th Cir. 1995). The Plaintiff has not alleged facts showing that he has any basis for a claim against the counsel substitute provided to him in this case. The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff next presented another denial of access to court claim concerning being denied supplies while he was held in prehearing detention. Once again, he failed to show any harm. The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also characterized the failure to pass out supplies as negligence. It is well settled that negligence on the part of prison officials does not give rise to civil rights claims. *See Daniels v. Williams*, 474 U.S. 327 (1986); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988).

The Plaintiff next complained about his grievances being denied. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. The claim fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The claim against Warden Miller is somewhat the same. The Plaintiff does not have a basis for a claim against Warden Miller just because he did not respond to his complaints. It should be

15

further noted that in order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Warden Miller did not participate in any alleged act of misconduct. He was sued because he held a supervisory role as the warden, but the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied. The claim against Warden Miller fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. It should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In conclusion, all of the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **9** day of **May, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE